UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,                    17-CR-68-LJV-MJR
                                             REPORT, RECOMMENDATION,
                                             AND ORDER

         -v-

JORGE RIVERA,

                        Defendant.
_____

       This case has been referred to the undersigned by the Hon. Lawrence J. Vilardo pursuant to 28 U.S.C. §636(b)(1) for all pre-trial matters and to hear and report upon dispositive motions.  (Dkt. No. 32).

## BACKGROUND

       On March 30, 2017, a federal grand jury in the Western District of New York returned a two count Indictment against Jorge Rivera.  (*See* Dkt. No. 1).  Count One alleges conspiracy to possess with intent to distribute, and to distribute, 500 grams or more of a mixture and substance containing cocaine, while Count Two alleges attempt to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine.  (*Id.*).  Presently before the Court are Rivera's pre-trial motions:  (1) to suppress statements[1]; (2) for a bill of particulars; (3) to compel disclosure of *Brady* and *Giglio* material; (4) for early disclosure of Jencks Act materials; (5) to reveal the identities of informants; (6) for discovery; and (7) for disclosure of evidence pursuant to Federal Rule of Evidence 404(b).  (*See* Dkt. No. 35).[2]  The government responded to Rivera's motions

---

[1]     Rivera first raised his motion to suppress statements at a Court appearance held on July 24, 2017. (*See* Dkt. No. 40).
[2]     Rivera also filed a motion to dismiss the Indictment (*see* Dkt. No. 35 ¶¶3-4), but he withdrew the motion at the Court appearance held on July 24, 2017.

and filed its own motion for reciprocal discovery.  (Dkt. No. 38).  The Court heard oral argument on all of the foregoing motions on March 14, 2018.  (Dkt. No. 62).

## DISCUSSION

The Court will address Rivera's motion to suppress statements before turning to his non-dispositive pre-trial motions and the government's motion for reciprocal discovery.

I.    *Motion to Suppress Statements*

Rivera moves to suppress his post-arrest statements on the basis that he purportedly did not knowingly and voluntarily waive his *Miranda* rights.  The Court held an evidentiary hearing on the motion on December 12, 2017 at which Drug Enforcement Administration ("DEA") Special Agent David Leary, United States Postal Inspection Service Inspector Jeff Maul, and DEA Special Agent Jonathan Sullivan testified on behalf of the government.  (Dkt. No. 51).  Rivera did not call any witnesses.  The Court received Government Exhibits ("Govt. Exs.") A-E into evidence at the hearing.  (*Id.*).  The parties thereafter filed post-hearing briefs (Dkt. Nos. 54, 60), and, as already noted, appeared for oral argument on March 14, 2018 (Dkt. No. 62).  After considering the evidence adduced at the hearing, the submissions of the parties, and argument from counsel, it is recommended that Rivera's motion to suppress statements be denied in its entirety.

A.    *Findings of Fact*

On June 7, 2016, Inspector Maul of the United States Postal Inspection Service observed a suspicious package arrive from Puerto Rico addressed to "Jorge Rivera Rivera," 465 Woodlawn Avenue, Buffalo, New York.  (Tr. 5-6, 18).[3]  Inspector Maul obtained a search warrant to search the package, and upon executing the warrant,

---

[3]    References to "Tr." are to the transcript of the December 12, 2017 evidentiary hearing.  (Dkt. No. 53).

learned that it contained a kilo of cocaine.  (Tr. 6).  Inspector Maul reported his findings to Agent Leary, who obtained an anticipatory search warrant allowing him to put a "beacon" inside the package to alert him as to its opening.  (Tr. 5-6).   Agent Leary then arranged for Inspector Maul to pose as a postal carrier and deliver the package to 465 Woodlawn Avenue.  (Tr. 6-7).  Prior to the delivery, the agents replaced the cocaine inside the package with "sham" cocaine.  (Tr. 7).

On the afternoon of June 8, Agent Leary and his team set up surveillance outside 465 Woodlawn Avenue to observe Inspector Maul conduct the controlled delivery.  (Tr. 7-8).  Inspector Maul was equipped with a "Kel" listening device that allowed Agent Leary to listen in on the delivery.  (*Id.*).  Inspector Maul also wore a video recording device that video recorded the delivery.  (*Id.*; Govt. Ex. A (video recording of controlled delivery)).  Around 4:00 p.m., Inspector Maul, dressed as a postal carrier and driving a postal vehicle, arrived at 465 Woodlawn Avenue.  (Tr. 7-8, 18).  As he exited his vehicle and walked toward the residence, a young boy opened the foyer door for him.  (Tr. 19-21).  The boy indicated to Inspector Maul that the package should be delivered to the upper apartment of the residence.  (Tr. 20).  A female in the lower apartment then announced to the resident of the upper apartment that a package was on its way.  (*Id.*).  Inspector Maul climbed the stairs to the upper apartment, and upon reaching the door at the top of the stairs, encountered an individual later identified as Rivera.  (Tr. 20-22).  Inspector Maul asked Rivera to sign a Postal Service form memorializing the delivery, and Rivera proceeded to sign and write his name ("Jorge Rivera Rivera") on the first page of the form.  (Tr. 22-24; Govt. Ex. D).  Because the signature was illegible, Inspector Maul asked Rivera to confirm that he was in fact "Mr. Rivera," and Rivera responded, "I write it like

that." (Tr. 22-23). Using the opposite side of the form, Inspector Maul recorded that he had completed the delivery. (Tr. 24; Govt. Ex. D). Inspector Maul then left the residence, returned to his vehicle, and debriefed Agent Leary's team regarding the controlled delivery. (Tr. 24-25).

After hearing from Inspector Maul, Agent Leary continued to monitor both 465 Woodlawn Avenue and the beacon inside the package. (Tr. 9). Less than an hour later, around 4:45 p.m., Agent Leary observed a Hispanic male drive up to 465 Woodlawn Avenue, exit his vehicle, and enter the residence. (Tr. 9, 13). The beacon inside the package "went off" approximately three minutes later, indicating to Agent Leary that the package had been opened. (Tr. 9). Agent Leary directed his team to enter and secure the residence and arrest the individuals involved. (Tr. 9-10). Four to five minutes later, Agent Leary's team gave him "an all-clear" alert from inside the residence. (Tr. 10). Agent Leary then entered the residence and encountered Rivera and another individual, Luis Rosario,[4] in custody. (Tr. 10, 14-15). Agent Leary asked Rivera, "[a]re you Jorge Rivera?," and Rivera answered "yes." (Tr. 11). Agent Leary attempted to ask Rivera for other pedigree information, but Rivera stated that he could not speak English. (Tr. 10-11). Agent Leary also offered Rivera a sweatshirt to wear, which he accepted. (Tr. 11). Agent Leary then directed his team to transport Rivera to the DEA Office, where he arranged for Agent Sullivan — the only person on Agent Leary's team who could speak Spanish — to interview Rivera in an interrogation room. (Tr. 10-12, 31). Another agent sat in on the interview. (Tr. 12).

---

[4]     Rivera and Rosario were both named in the criminal complaint that preceded the Indictment in this matter (see Dkt. No. 1 (criminal complaint dated June 9, 2016)), but only Rivera was indicted.

Agent Sullivan has been a DEA agent since December 2004. (Tr. 26). Before joining the DEA, he served on the United States Border Patrol in Laredo, Texas. (Tr. 27-28). As part of his Border Patrol training, Agent Sullivan completed a six-month Spanish language school at the Border Patrol Academy. (Tr. 27, 41-42). Agent Sullivan has communicated in Spanish in both law enforcement and social settings. (Tr. 27). He communicated in Spanish "every day" for fourteen years before he moved to the Buffalo DEA office. (Tr. 28-29). He has conducted pre- and post-arrest interviews, proffers, 5K debriefs, and confidential source interviews in Spanish. (Tr. 28). He has interviewed thousands of defendants in Spanish and has administered *Miranda* warnings in Spanish more times than he can remember. (Tr. 29). He has also successfully communicated with Spanish speakers who speak different dialects, including Puerto Rican Spanish. (Tr. 30-31). He describes himself as a "fluent" Spanish speaker when it comes to general conversation and law enforcement matters. (Tr. 29).

Agent Sullivan proceeded to interview Rivera in Spanish. (Govt. Ex. B (video recording of interview), Govt. Ex. C (English transcription of interview)). Using a two-sided DEA-issued *Miranda* card that has the *Miranda* warnings printed in Spanish on one of the two sides, Agent Sullivan read Rivera his *Miranda* rights and asked him if he understood his rights. (Tr. 31-33; Govt. Ex. E). Rivera responded with a "slight nod." (Tr. 33, 38, 46; Govt. Ex. B).[5] Agent Sullivan then asked Rivera, "[m]aybe can you answer the questions?," to which Rivera responded, "I think I can." (Govt. Ex. C at 1).[6] Agent

---

[5]     The English transcription of the interview states that Rivera also responded "Mhmm" to this question (Govt. Ex. C at 1), but the Court did not hear this or any other verbal response when it viewed the video recording of the interview (Govt. Ex. B).

[6]     Agent Sullivan testified that Rivera responded, "I'll try" (Tr. 33), but the English transcription of the interview indicates that Rivera said, "I think I can" (Govt. Ex. C at 1).

Sullivan and Rivera then began discussing Rivera's pedigree information.  (Govt. Ex. C at 1-4).   Approximately five minutes into the interview, Agent Sullivan shifted the conversation to the delivery of the package.  (Govt. Ex. B, Govt. Ex. C at 4).   Rivera denied having accepted the package, claiming instead that a mailman knocked on his door and left it on the floor.  (Govt. Ex. C at 5-6).  Agent Sullivan asked Rivera who opened the package, but Rivera said that he did not know.  (Govt. Ex. C at 6-7).  Agent Sullivan then told Rivera that he had a camera on Rivera's residence and a sensor inside the package, at which point Rivera's demeanor began to change.  (Govt. Ex. B, Govt. Ex. C at 7).   Rivera became agitated, raised his voice, and repeatedly told Agent Sullivan to check the camera.  (Govt. Ex. B, Govt. Ex. C at 7-8).  Agent Sullivan soon "determined that [he] wasn't going to get a truthful answer out of [Rivera]," so he terminated the interview.  (Tr. 41; Govt. Ex. C at 9).  The entire interview lasted no more than fifteen minutes.  (Govt. Ex. B).  Agent Sullivan testified that Rivera understood his questions during the interview and responded to them accordingly.  (Tr. 35-37).  At no point did Rivera tell Agent Sullivan that he could not understand his use of the Spanish language. (Govt. Ex. C).  In addition, at no point during the interview did Rivera request an attorney or indicate that he wished to end the interview.  (Tr. 36, 41; Govt. Ex. C).

The Court finds Agent Leary, Inspector Maul, and Agent Sullivan to be credible witnesses.  Indeed, much of their testimony is supported by the video recordings of the controlled delivery (Govt. Ex. A) and interview (Govt. Ex. B).

### B. _Conclusions of Law_

A suspect in custody must be advised prior to any questioning "that he has the right to remain silent, that anything he says can be used against him in a court of law, that

he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 479 (1966). "Even absent the accused's invocation of [his *Miranda* rights], the accused's statement during a custodial interrogation is inadmissible at trial unless the prosecution can establish that the accused 'in fact knowingly and voluntarily waived [*Miranda*] rights' when making the statement." *Berghuis v. Thompkins*, 560 U.S. 370, 382 (2010) (second alteration in original) (quoting *North Carolina v. Butler*, 441 U.S. 369, 373 (1979)).  Here, the parties do not dispute that Rivera made his statements to Agent Sullivan in the context of a custodial interrogation after having been read his *Miranda* rights.  The issue before the Court is thus whether Rivera knowingly and voluntarily waived his *Miranda* rights when making the statements.[7]

"To prove a valid waiver, the government must show (1) that the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right." *United States v. Jaswal*, 47 F.3d 539, 542 (2d Cir. 1995).  "Only if the totality of the circumstances 'reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.'" *United States v. Male Juvenile (95-CR-1074)*, 121 F.3d 34, 40 (2d Cir. 1997) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).  "[W]aiver need not be express." *United States v. Plugh*, 648 F.3d 118, 127 (2d Cir. 2011).  So long as "the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384.  The existence of

---

[7]     Rivera does not argue that he invoked his *Miranda* rights, and there is no evidence in the record to support such a finding.

a language barrier between the defendant and law enforcement is relevant in determining whether or not the defendant knowingly waived his *Miranda* rights, *see Campaneria v. Reid*, 891 F.2d 1014, 1020 (2d Cir. 1989), but "the determination is not difficult when the suspect is advised of his rights in a language that he understands," *United States v. Santiago*, 720 F. Supp. 2d 245, 252 (W.D.N.Y. 2010).  For waiver to be voluntary, it must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran*, 475 U.S. at 421.  Courts look to "three sets of circumstances" in assessing voluntariness, namely:  "(1) the characteristics of the [defendant], (2) the conditions of interrogation, and (3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988).  The government must prove waiver by a preponderance of the evidence. *See United States v. Gaines*, 295 F.3d 293, 297 (2d Cir. 2002).

The government has established that Rivera knowingly waived his *Miranda* rights when giving his statements to Agent Sullivan.  There was no language barrier between Agent Sullivan and Rivera given that Agent Sullivan conducted the interview in Spanish. Agent Sullivan is fluent in Spanish in law enforcement settings, and the video recording and English transcription of the interview show that Rivera had no difficulty understanding Agent Sullivan's Spanish.  *See Santiago*, 720 F. Supp. 2d at 253 (finding valid waiver where defendant was interviewed in Spanish and never indicated to the officer "that he had any trouble understanding" him).  At the outset of the interview, Agent Sullivan read Rivera his *Miranda* rights using the "Spanish side" of his DEA-issued *Miranda* card. *See United States v. Noorzai*, 422 F. App'x 54, 56 (2d Cir. 2011) (summary order) (finding knowing and voluntary *Miranda* waiver where "[t]here [was] nothing in the record to

suggest that the *Miranda* warnings were not translated properly").  Agent Sullivan asked Rivera if he understood his *Miranda* rights, and Rivera nodded his head in agreement. Agent Sullivan then asked Rivera, "maybe can you answer the questions?," to which Rivera responded, "I think I can."  Rivera then responded to Agent Sullivan's questions without any objection.  At no point did Rivera request an attorney or seek to end the interview.  The fact that Rivera fully understood his *Miranda* rights and willingly answered Agent Sullivan's questions conclusively demonstrates that he knowingly and intelligently waived his *Miranda* rights.  *See Berghuis*, 560 U.S. at 384*; see also Plugh*, 648 F.3d at 127.

The government has also shown that Rivera voluntarily waived his *Miranda* rights. Agent Sullivan did not coerce or threaten Rivera during the interview, nor did he make Rivera any type of promise that might have overborne Rivera's will.  *See Plugh*, 648 F.3d at 128 (finding voluntary waiver of *Miranda* rights where the defendant was not coerced, threatened, or made any type of promise such that his will was overborne).  Rivera wore comfortable clothes during the interview, sat in a chair, and was not in handcuffs.  (Govt. Ex. B).  The interview was brief — it lasted less than fifteen minutes.  Although Rivera states that he has no experience with English-speaking law enforcement and only recently moved to the United States, these factors do not defeat a finding of voluntariness where, as here, Rivera fully understood his *Miranda* rights and willingly spoke with law enforcement.  *See United States v. Campo Flores*, No. S5 15 Cr. 765(PAC), 2016 WL 5946472, at *5, 7 (S.D.N.Y. Oct. 12, 2016) (finding knowing and voluntary *Miranda* waiver even though defendants were arrested overseas, were unfamiliar with the United States legal system, and were not fluent in English).  Moreover, contrary to Rivera's argument,

he did not have to sign a written waiver form in order to have validly waived his *Miranda* rights.  *See Butler*, 441 U.S. at 373; *see also United States v. Jin Kyoo Park*, 218 F. App'x 74, 75-76 (2d Cir. 2007) (summary order) (finding defendants' foreign-language *Miranda* waivers to be valid even though defendants did not sign written waiver forms).

Accordingly, based on the totality of the circumstances described above, the Court finds that Rivera knowingly and voluntarily relinquished his *Miranda* rights.  It is thus recommended that Rivera's motion to suppress statements be denied.

II.    *Motion for a Bill of Particulars*

Rivera requests a bill of particulars on each count of the Indictment.  (Dkt. No. 35 ¶¶5-22).  The government opposes the request.  (Dkt. No. 38 at 6-7).

Federal Rule of Criminal Procedure 7(f) "permits a defendant to seek a bill of particulars in order to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."  *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  "A bill of particulars is required only where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (internal quotation marks and citation omitted). The Court "has the discretion to deny a bill of particulars 'if the information sought by defendant is provided in the indictment or in some acceptable alternate form.'"  *United States v. Barnes*, 158 F.3d 662, 665 (2d Cir. 1998) (quoting *Bortnovsky*, 820 F.2d at 574); *see also United States v. Messina*, No. 11-CR-31(KAM), 2012 WL 463973, at *10 (E.D.N.Y. Feb. 13, 2012) ("In determining whether a defendant has shown [the] necessity

[for a bill of particulars], the trial court must examine the totality of the information available to the defendant, including the indictment and general pre-trial discovery.") (internal quotation marks and citation omitted).  "The decision of whether or not to grant a bill of particulars rests within the sound discretion of the district court."  *Bortnovsky*, 820 F.2d at 574.

Here, a bill of particulars is not warranted on Count One of the Indictment (conspiracy) because the alleged conspiracy spanned only one month and does not appear to have been particularly complex.  *Cf. Barnes*, 158 F.3d at 666 ("[W]e have little hesitancy in saying that a bill of particulars or other adequate disclosure is appropriate where a conspiracy count covers a complex series of events over a number of years, but provides only the bare bones of the charge . . . .").  Contrary to Rivera's request, the government is not required to particularize overt acts, unnamed co-conspirators, specific dates, or other details regarding the alleged conspiracy.  *See United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge[.]"); *United States v. Muyet*, 945 F. Supp. 586, 599 (S.D.N.Y. 1996) ("The defendants are not entitled to a bill of particulars setting forth the 'whens,' 'wheres,' and 'with whoms' regarding the . . . enterprise and conspiracy.") (quoting *United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993)).  As for Count Two (attempt to possess with intent to distribute 500 grams or more of a mixture and substance containing cocaine), particularization is not required because the count is limited to a single day — namely, June 8, 2016, the date on which law enforcement conducted the controlled delivery of the package to 465 Woodlawn Avenue.  In sum, the Indictment together with

the discovery materials provided by the government will allow Rivera to adequately prepare his defense and avoid prejudicial surprise and double jeopardy concerns.  *See Bortnovsky*, 820 F.2d at 574.  Accordingly, his motion for a bill of particulars is denied.

III.    <u>Motion to Compel Disclosure of</u> Brady <u>and</u> Giglio <u>Material</u>

Rivera moves for the immediate disclosure of *Brady*[8] material and *Giglio*[9] impeachment material.  (Dkt. No. 35 ¶¶23-24, 31).  "[A]s a general rule, *Brady* and its progeny do not require immediate disclosure of all exculpatory and impeachment material upon request by a defendant."  *United States v. Coppa*, 267 F.3d 132, 146 (2d Cir. 2001).  "[A]s long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner."  *Id.* at 144.  "[T]he time required for the effective use of a particular item of evidence will depend on the materiality of that evidence . . . as well as the particular circumstances of the case."  *Id.* at 146.

The government states in this case that it "is fully aware of its obligations and responsibilities under *Brady* and acknowledges its continuing duty under *Brady* to produce such material, if and when it is aware of it."  (Dkt. No. 38 at 8).  With regard to *Giglio* impeachment material, the government states that it will produce such material when it is directed to do so by the assigned District Judge.  (*Id.* at 9).  Given the government's representations, Rivera's motion to compel the immediate production of *Brady/Giglio* material is denied.  Consistent with *Coppa*, the government shall timely disclose any *Brady* and *Giglio* material to Rivera.  *See United States v. Padovani*, No. 14-CR-00224-WMS-JJM, 2016 WL 5402696, at *4 (W.D.N.Y. Sept. 28, 2016).

---

[8]     *Brady v. Maryland*, 373 U.S. 83 (1963).
[9]     *Giglio v. United States*, 405 U.S. 150 (1972).

IV.   _Motion for Early Disclosure of Jencks Act Materials_

Rivera moves to compel the government to disclose witness statements at least two days before trial.  (Dkt. No. 35 ¶¶25-27).  The government states that it will disclose such statements as directed by the assigned District Judge.  (Dkt. No. 38 at 10).

Under the Jencks Act, "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement . . . of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."  18 U.S.C. §3500(b).  Because the Court cannot compel the government to produce the statements any earlier than is required under §3500, _see United States v. Percevault_, 490 F.2d 126, 129 (2d Cir. 1974), Rivera's motion for pre-trial disclosure of such statements is denied.

V.   _Motion to Reveal the Identities of Informants_

Rivera moves to compel the government to reveal the identities of informants.  (Dkt. No. 35 ¶¶28-29).   The government states in response that "[n]o confidential informant was used in this case."  (Dkt. No. 38 at 10).  Given the government's response, Rivera's motion is denied as moot.

VI.   _Motion for Discovery_

Rivera moves for discovery from the government.   (Dkt. No. 35 ¶¶32-55).  However, at oral argument, the parties agreed that no discovery is outstanding at this time.  Therefore, Rivera's motion for discovery is denied as moot.  The government is reminded that its disclosure obligations continue up through and during trial.  _See_ Fed. R. Crim. P. 16(c).

Rivera also seeks discovery of grand jury transcripts.  (Dkt. No. 35 ¶34).  The government opposes the request.  (Dkt. No. 38 at 13).  The burden rests on the defendant "to show a particularized need [for the grand jury materials] that outweighs the need for secrecy."  *In re Grand Jury Subpoena*, 103 F.3d 234, 239 (2d Cir. 1996) (quoting *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978)).  Rivera has not met this burden here because he has not explained why he needs to review the grand jury materials.  Therefore, this branch of Rivera's motion is denied.  The Court notes, however, that "transcripts of grand jury testimony of witnesses called by the government to testify at trial must be made available to the defendant pursuant to and in accordance with the provision[s] of 18 U.S.C. §3500."  *United States v. Mehta*, No. 11-CR-268S(Sr), 2013 WL 1878903, at *11 (W.D.N.Y. May 3, 2013).

VII.   *Motion for Disclosure of Evidence Pursuant to Federal Rule of Evidence 404(b)*

Rivera moves to compel the government to disclose any evidence it contends would be admissible under Federal Rule of Evidence 404(b) and any evidence it intends to use to impeach his credibility should he testify at trial.  (Dkt. No. 35 ¶¶56-57).  With regard to Rule 404(b), the government has provided Rivera "preliminary" notice that "it intends to introduce at trial . . . all prior criminal conduct acts or wrongs for the purpose of showing proof of [Rivera's] motive, opportunity, intent, preparation, plan, knowledge, identity, and the absence of mistake or accident."  (Dkt. No. 38 at 15).  The government states that it will provide a more definitive notice as directed by the assigned District Judge.  (*Id.*).  The government further states that it will disclose impeachment material as directed by the assigned District Judge.  (*Id.* at 14).  Based on the government's response,

Rivera's motion is denied as moot.  *See United States v. Wilson*, No. 15-CR-00142-EAW-MJR, 2017 WL 1456984, at *11 (W.D.N.Y. Apr. 24, 2017).

VIII.    *Government's Motion for Reciprocal Discovery*

The government moves for reciprocal discovery under Federal Rule of Criminal Procedure 16(b).  (Dkt. No. 38 at 16-17).  Rivera has not opposed the government's request.  Therefore, the government's motion for reciprocal discovery is granted.

## CONCLUSION

For the foregoing reasons, it is recommended that Rivera's motion to suppress statements be denied.  Rivera's non-dispositive pre-trial motions (Dkt. No. 35) are denied as set forth herein.  The government's motion for reciprocal discovery (Dkt. No. 38) is granted.  Because the Court has now reported on or decided all of Rivera's pre-trial motions, further proceedings in this case should take place before Judge Vilardo.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report, Recommendation, and Order be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report, Recommendation, and Order must be filed with the Clerk of Court within fourteen days of service of this Report, Recommendation, and Order in accordance with the above statute, Rules 59(b), 45(a), and 45(c) of the Federal Rules of Criminal Procedure, and Local Rule of Criminal Procedure 59.  Any requests for an extension of this deadline must be made to Judge Vilardo.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report, Recommendation, and Order***

**WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.**  *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance.  *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with these provisions may result in the District Court's refusal to consider the objection**.

**SO ORDERED**.

Dated:       March 19, 2018
            Buffalo, New York

                                   /s/ Michael J. Roemer
                                   MICHAEL J. ROEMER
                                   United States Magistrate Judge